UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JEFFRY BROWN,                          CIVIL NO. 17-1348 (JRT/DTS)

    Plaintiff,

v.                                  <u>REPORT AND RECOMMENDATION</u>

GLOBAL CASHSPOT CORP.,

    Defendant.

This matter came before the undersigned Magistrate Judge of the District Court on Defendant's Motion to Transfer Venue [Docket No. 13] pursuant to 28 U.S.C. § 1404(a). This matter was referred for a Report and Recommendation pursuant to 28 U.S.C. § 636. Steven Ness, Esq., Business Law Center, PLC appeared on behalf of Plaintiff. Justin Jenkins, Esq., Winthrop & Weinstine, PA appeared on behalf of Defendant. For the reasons stated below, it is recommended that Defendant's motion be GRANTED.

## BACKGROUND

Plaintiff Jeffry Brown ("Brown") and Defendant Global CashSpot Corp. ("GCS") entered into an Employment Agreement dated January 31, 2015 and a Common Stock Purchase Agreement dated January 15, 2015 under which Brown became an employee and officer of GCS at a salary of $175,000 and was issued 500,000 Founders Shares of company stock at a purchase price of $0.001 per share. Affidavit of Stephen M. Studdert Ex. A Recitals C & D and ¶ 3, Ex. B ¶ 1, Docket No. 16. Each agreement contains a forum-selection clause stating that all disputes arising from or relating to the

agreements shall be exclusively litigated in the state or federal courts of the State of Nevada.  *Id.* Ex. A ¶ 11(a), Ex. B ¶ 6(a).

On April 24, 2017 Brown filed a lawsuit against GCS alleging breach of the employment and stock purchase agreements, unpaid wages, and wrongful cancellation of the Founders Shares of stock.  Docket No. 1.  On June 6, 2017 GCS filed this Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).  Docket No. 13.  A hearing was held on July 10, 2017.  Docket No. 27.

## DISCUSSION

GCS's transfer motion is premised on the forum-selection clauses in the employment and stock purchase agreements.  "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."  *Atlantic Marine Construction Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 134 S.Ct. 568, 581 (2013).  "[F]ederal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause."  *Id.* at 579 (citation omitted).

"The pertinent § 1404(a) analysis requires the Court to engage in a three-step inquiry."  *Rogovsky Enterprise, Inc. v. MasterBrand Cabinets, Inc.*, 88 F.Supp.3d 1034, 1040 (D. Minn. 2015).  The Court must (1) determine whether the District Court of Minnesota is a proper venue without regard to the forum-selection clause; (2) determine the validity of the clause; and (3) weigh a series of factors to determine the enforceability of the clause.  *Id.*

At step one Brown and GCS do not dispute that the District of Minnesota is a proper venue for this lawsuit absent the forum-selection clauses.

At step two the Court determines the validity of the forum-selection clauses. "[A] forum-selection clause is valid if it is 'a freely negotiated private . . . agreement, unaffected by fraud, undue influence, or overweening bargaining power.'" *Id.* at 1042 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)); *see also M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) ("Forum selection clauses are prima facie valid . . . unless . . . invalid for reasons such as fraud or overreaching."), *reh'g and reh'g en banc denied* (Aug. 4, 1999). Brown does not allege that either the agreements or, specifically, their forum-selection clauses were procured by fraud or undue influence, nor does he claim that GCS had excessive bargaining power during negotiation of the agreements. His complaint, affidavit and memorandum of law opposing the transfer motion do not contain any such factual allegations or legal arguments. Docket Nos. 1, 19, 20. The Court finds the forum-selection clauses in the agreements are valid.

At step three of the § 1404(a) analysis the Court determines the enforceability of the forum-selection clauses. "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atlantic Marine*, 134 S.Ct. at 581 (internal quotation omitted). "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (internal quotation omitted). "[T]he plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*

The factors to be weighed to determine enforceability are "public-interest factors only." *Id.* at 582. Such factors may include administrative difficulties resulting from court congestion, the local interest in having localized controversies decided at home, and the interest in trying a diversity case in a forum that is at home with the law. *Id.* at 581 n.6. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582.

The Court "should not consider arguments about the parties' private interests" because, by agreeing to a forum-selection clause, "they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Any inconvenience was "clearly foreseeable at the time of contracting." *Id.*

GCS states that it chose to incorporate in Nevada because of favorable tax and corporate laws, its largest founding shareholder is a Nevada limited liability company, its strategic agreement with its technical service provider has Nevada choice-of-law and forum-selection clauses, and it attempted to include Nevada choice-of-law and forum-selection clauses in all or most of its employment and founder stock agreements in order to achieve uniformity if disputes resulted in litigation. Supplemental Affidavit of Stephen M. Studdert ¶¶ 3-4, 7, Docket No. 25. GCS's initial officers and directors were located in several states throughout the country (none in Nevada), and GCS does not maintain a traditional headquarters in any state. *Id.* ¶ 7.

Brown contends that the forum-selection clauses should not be enforced because GCS's articulated reasons do not serve a legitimate business purpose, given that GCS only maintains a mailing address in Nevada, has no business operations

4

there, and Brown is a Minnesota resident who performed his job in Minnesota. Affidavit of Jeffry Brown ¶¶ 1, 3-7, 10, Docket No. 20. He claims that Minnesota law applies to his employment claims and that it would be "very inconvenient and costly" for him to litigate in Nevada, but "cause little inconvenience or costs for the Defendant." *Id.* ¶ 10. Brown deems Nevada a "remote alien forum" that "would effectively deprive [him] of his day in court." Brown Br. 6, Docket No. 19.

*Atlantic Marine* makes clear, however, that mere inconvenience, foreseeable by the parties at the time of contracting, is a "private interest" factor that the Court will not consider when determining the enforceability of a valid forum-selection clause. 134 S.Ct. at 582. Brown has not identified any feature of the Nevada federal courts that renders them unable or unsuitable to adjudicate this lawsuit, nor has he explained how or why the Nevada forum is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *See Bremen*, 407 U.S. at 18 (quoted in *Servewell Plumbing, LLC v. Federal Ins. Co.*, 439 F.3d 786, 790 (8th Cir. 2006)). Likewise, the higher cost alleged (though not detailed) by Brown to litigate in Nevada does not rise to the level of depriving him of his day in court. *See Servewell Plumbing*, 439 F.3d at 790 (defendant's expense to secure Arkansas witnesses for litigation in Florida "falls well short of depriving it of its day in court").

Brown also contends that enforcement of the forum-selection clauses would "contravene strong Minnesota public policy," that Minnesota has a local interest in having Minnesota-based claims decided in Minnesota, and that "judicial economies" favor keeping the lawsuit in Minnesota. Brown Br. 7, Docket No. 19. However, Brown does not identify any specific policy or strong public interest at stake here that would

5

overcome the "strong countervailing public policy in favor of holding parties to their agreements." *See Servewell Plumbing*, 439 F.3d at 791 (permissive venue statute in insurance code is not the kind of "strong public policy" sufficient to invalidate a forum-selection clause). Brown also has not stated any reasons why a Nevada federal court would not be capable of applying Minnesota law, if Minnesota law were to apply to any of his claims. *See Atlantic Marine*, 134 S.Ct. at 584 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia."). Finally, the Court does not find that "judicial economies" are much of a consideration here, as this lawsuit is still in its early stages, with this transfer motion filed in response to the complaint.

Brown's arguments against enforcing the forum-selection clauses boil down to a general claim of unfairness because the activities relating to the lawsuit have more contacts with Minnesota than Nevada and because Brown rejects GCS's business justification for the parties' contractual selection of a Nevada forum. However, it is common and legitimate for a business to choose a particular state in which to incorporate due to the real or perceived benefits of that state's tax and corporate laws. It is also legitimate for a business to want a consistent forum for resolving disputes among its executive or ownership group, or with its key vendors. In addition, Brown has not identified anything unique or impactful about the subject matter, the parties or the nature of this lawsuit that would cause the State of Minnesota to have an overriding interest in having it adjudicated here. Accordingly, the Court finds that Brown has not

met his burden to establish that this is one of the exceptional cases in which enforcement of a forum-selection clause is unwarranted.

## RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT Defendant's Motion to Transfer Venue [Docket No. 13] be **GRANTED.**

Dated:  July 14, 2017

*/s David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).